



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT HEALTH CARE FRAUD, CONSPIRACY TO RECEIVE AND PAY HEALTH CARE KICKBACKS, MONEY LAUNDERING, CONSPIRACY TO FALSIFY RECORDS IN A FEDERAL INVESTIGATION, FALSIFICATION OF RECORDS <u>IN A FEDERAL INVESTIGATION, AND FORFEITURE</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION NO. 13-101 |
| VERSUS | * | SECTION: "R" (3) |
| MARK MORAD | * | 18 U.S.C. § 1349 |
| ALVIN DARBY | | 18 U.S.C. § 371 |
| BARBARA SMITH | * | 18 U.S.C. § 1956 |
| ROY E. BERKOWITZ | | 18 U.S.C. § 371 |
| DEMETRIAS TEMPLE | * | 18 U.S.C. § 1519 |
| NICOLE OLIVER | | 18 U.S.C. § 2 |
| | * | 18 U.S.C. § 982 |

\*      \*      \*

## THE GRAND JURY CHARGES:

### COUNT 1

### General Allegations

At all times relevant to this superseding indictment:

____/ Fee_____
_____ Process_____
_X_ Dktd_____
____ CtRmDep_____
____ Doc. No._____

## The Medicare Program

1.     The Medicare Program ("Medicare") was a federal health care program providing

benefits to persons who were over the age of 65 or disabled.  Medicare was administered by the

United States Department of Health and Human Services ("HHS") through its agency, the

Centers for Medicare & Medicaid Services ("CMS").  Individuals who received benefits under

Medicare where referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United

States Code, Section 24(b).

3.     "Part A" of the Medicare program covered certain eligible home health care costs

for medical services provided by a home health agency ("HHA") to beneficiaries who required

home health care services because of an illness or disability that caused them to be

homebound.  Payments for home health care medical services under Medicare Part A were

typically made directly to an HHA or provider based on claims submitted to the Medicare

program for qualifying services that had been provided to eligible beneficiaries, rather than

directly to the beneficiary.

4.     Physicians, clinics and other health care providers, including HHAs that provided

services to Medicare beneficiaries were able to apply for and obtain a "provider number."  A

health care provider that was issued a Medicare provider number was able to file claims with

Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was

required to set forth, among other things, the beneficiary's name and Medicare number, the

services that had been performed for the beneficiary, the date the services were provided, the

cost of the services, and the name and identification number of the physician or other health care

provider that ordered the services.

2

## Reimbursements for Home Health Services

5.      The Medicare Part A program, through a Medicare contractor, reimbursed 100%

of the allowable charges for participating HHAs providing home health care services only if the

patient qualified for home health care benefits. A patient qualified for home health care benefits

only if:

> a.      the patient was confined to the home, also referred to as homebound;
>
> b.      the patient was under the care of a physician who specifically determined
>         that there was a need for home health care and established the Plan of Care
>         ("POC"); and
>
> c.      the determining physician signed a certification statement specifying that
>         the beneficiary needed intermittent skilled nursing services, physical
>         therapy, or speech therapy, the beneficiary was confined to the home, that
>         a POC for furnishing services was established and periodically reviewed,
>         and that the services were furnished while the beneficiary was under the
>         care of the physician who established the POC.

6.      HHAs were reimbursed under the Home Health Prospective Payment System

("PPS"). Under PPS, Medicare paid Medicare-certified HHAs a predetermined base payment for

each 60 days that care was needed. This 60-day period was called an "episode of care." The

base payment was adjusted based on the health condition and care needs of the beneficiary. This

adjustment was done through the Outcome and Assessment Information Set ("OASIS"), which

was a patient assessment tool for measuring and detailing the patient's condition. If a beneficiary

was still eligible for care after the end of the first episode of care, a second episode could

3

commence. There were no limits to the number of episodes of home health benefits a beneficiary could receive as long as the beneficiary remained eligible.

## Record Keeping Requirements

7.    Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the home health agency. These medical records were required to be sufficient to permit Medicare, through a contractor, to review the appropriateness of Medicare payments made to the home health agency under the Part A program.

8.    Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was a POC that included the physician order for home health care, diagnoses, types of services/frequency of visits, prognosis/ rehabilitation potential, functional limitations/activities permitted, medications/treatments/ nutritional requirements, safety measures/discharge plans, goals, and physician signature. Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services, and an OASIS.

9.    Medicare Part A regulations required provider HHAs to maintain medical records of each visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional

condition. The home health nurse, therapist and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury.

## The Subject Medicare Providers

10.     Medical Specialists of New Orleans ("MSNO") was a medical clinic in New Orleans, Louisiana, that began operations on or about September 16, 2002. MSNO purported to provide medical services to Medicare beneficiaries.

11.     Interlink Health Care Services ("Interlink") was a Louisiana corporation incorporated on or about January 30, 1997. Interlink was purportedly engaged in the business of providing home health services to Medicare beneficiaries. Interlink had a Medicare provider number and was eligible to receive payments from Medicare for home health services provided to beneficiaries, if the services were medically necessary. From April 2005 through December 2012, Interlink billed Medicare approximately $28,431,671 for home health services purportedly provided to Medicare beneficiaries, and was paid approximately $23,184,862.

12.     Memorial Home Health Inc. ("Memorial") was a Louisiana corporation incorporated on or about July 2, 2004. Memorial was purportedly engaged in the business of providing home health services to Medicare beneficiaries. Memorial had a Medicare provider number and was eligible to receive payments from Medicare for home health services provided to beneficiaries, if the services were medically necessary. From April 2005 through December 2012, Memorial billed Medicare approximately $12,996,814 for home health services purportedly provided to Medicare beneficiaries and was paid approximately $15,230,704.

13.     Lakeland Health Care Services ("Lakeland") was a Louisiana corporation incorporated on or about June 23, 2004. Lakeland was purportedly engaged in the business of

5

providing home health services to Medicare beneficiaries. Lakeland had a Medicare provider

number and was eligible to receive payments from Medicare for home health services provided

to beneficiaries, if the services were medically necessary. From April 2005 through December

2012, Lakeland billed Medicare approximately $8,087,080 for home health services purportedly

provided to Medicare beneficiaries, and was paid approximately $6,377,392.

## The Defendants

14.    Defendant **MARK MORAD**, a resident of Slidell, Louisiana, owned and

operated Interlink, Memorial and Lakeland, and paid and caused to be paid illegal kickbacks to

patient recruiters in return for referring Medicare beneficiaries for home health services.

15.    Defendant **ALVIN DARBY**, a resident of Slidell, Louisiana, was a medical

doctor licensed by the State of Louisiana who fraudulently certified beneficiaries as eligible for

home health services so that fraudulent claims could be filed with Medicare for home health

services that were not medically necessary, and in some cases were not rendered.

16.    Defendant **BARBARA SMITH**, a resident of Metairie, Louisiana, was a medical

doctor licensed by the State of Louisiana who fraudulently certified beneficiaries as eligible for

home health services so that fraudulent claims could be filed with Medicare for home health

services that were not medically necessary, and in some cases were not rendered.

17.    Defendant **ROY BERKOWITZ**, a resident of Slidell, Louisiana, was a medical

doctor licensed by the State of Louisiana who fraudulently certified beneficiaries as eligible for

home health services so that fraudulent claims could be filed with Medicare for home health

services that were not medically necessary, and in some cases were not rendered.

18.    Defendant **DEMETRIAS TEMPLE**, a resident of New Orleans, Louisiana,

referred beneficiaries to defendant **MARK MORAD** in return for being paid illegal kickbacks.

6

19.    Defendant **NICOLE OLIVER**, a resident of Napoleonville, Louisiana, referred

beneficiaries to defendant **MARK MORAD** in return for being paid illegal kickbacks.

## Conspiracy to Commit Health Care Fraud
## (18 U.S.C. § 1349)

20.    Beginning in or around April 2005, and continuing through the present, in the

Eastern District of Louisiana, and elsewhere, defendants, **MARK MORAD, ALVIN DARBY,**

**BARBARA SMITH, ROY BERKOWITZ, DEMETRIAS TEMPLE,** and **NICOLE**

**OLIVER**, did knowingly and willfully combine, conspire, confederate, and agree with each

other and with others, known and unknown to the Grand Jury, to commit health care fraud, that

is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce,

as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by

means of materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health care benefit program, in

connection with the delivery of, and payment for, health care benefits, items, and services, in

violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

21.    It was a purpose of the conspiracy for defendants **MARK MORAD, ALVIN**

**DARBY, BARBARA SMITH, ROY BERKOWITZ, DEMETRIAS TEMPLE,** and

**NICOLE OLIVER** to unlawfully enrich themselves by, among other things, (a) arranging for

the use of Medicare beneficiary numbers as the bases of claims filed for home healthcare

services that were medically unnecessary, and in some cases not rendered; (b) causing the

submission and concealment of false and fraudulent claims to Medicare, the receipt and transfer

of the proceeds from the fraud, and the payment of illegal kickbacks; and (c) causing the

diversion of the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and other co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

22.     **MARK MORAD** obtained and maintained signature authority for a corporate bank account of MSNO, J.P. Morgan Chase Account Number xxxxxxxxxxx7381.

23.     **MARK MORAD** owned and operated Interlink and maintained a valid Medicare provider number for Interlink in order to submit Medicare claims for home health services that were medically unnecessary, and in some cases were not rendered.

24.     **MARK MORAD** obtained and maintained signature authority for a corporate bank account of Interlink, Capital One Account Number xxxxxx2401.

25.     **MARK MORAD** owned and operated Memorial and maintained a valid Medicare provider number for Memorial in order to submit Medicare claims for home health services that were medically unnecessary, and in some cases were not rendered.

26.     **MARK MORAD** obtained and maintained signature authority for a corporate bank account of Memorial, Capital One Account xxxxxx2282.

27.     **MARK MORAD** owned and operated Lakeland and maintained a valid Medicare provider number for Lakeland in order to submit Medicare claims for home health services that were medically unnecessary, and in some cases were not rendered.

28.     **MARK MORAD** obtained and maintained signature authority for a corporate bank account of Lakeland, Capital One Account Number xxxxxx2320.

29.     **MARK MORAD** obtained and maintained sole signature authority for a corporate bank account of Goldwell Investments, Inc., ("Goldwell"), Capital One Account Number xxxxxx1382 (the "Goldwell Account").

30.     Patient recruiters, including **DEMETRIAS TEMPLE, NICOLE OLIVER,** and other co-conspirators, known and unknown, would recruit Medicare beneficiaries, or cause Medicare beneficiaries to be recruited, so that they could be referred to Interlink, Memorial, or Lakeland for home health services that were medically unnecessary, and in some cases were not rendered. In return, **MARK MORAD** would pay and cause to be paid illegal kickbacks to patient recruiters, including **DEMETRIAS TEMPLE** and **NICOLE OLIVER,** for referring those beneficiaries.

31.     **ALVIN DARBY, BARBARA SMITH, ROY BERKOWITZ,** and other co-conspirators, known and unknown, would refer patients to Interlink, Memorial, or Lakeland for home health services and sign POCs for beneficiaries so that these HHAs could bill Medicare for home health services that were medically unnecessary, and in some cases were not rendered. In return, **MARK MORAD** would pay or cause to be paid, payments to physicians, including **ALVIN DARBY, BARBARA SMITH, ROY BERKOWITZ,** and other co-conspirators, purportedly in exchange for medical assessments and home visits purportedly conducted by the these physicians.

32.     **MARK MORAD, ALVIN DARBY, BARBARA SMITH, ROY BERKOWITZ, DEMETRIAS TEMPLE,** and **NICOLE OLIVER** would submit and cause the submission of fraudulent claims to Medicare by billing for skilled nursing when such services were medically unnecessary, and in some cases were not rendered.

33. Reimbursements paid on behalf of Medicare to the HHAs were deposited into bank accounts established by **MARK MORAD** on behalf of the HHAs. Once deposited, **MARK MORAD** would transfer funds from these accounts into the Goldwell Account.

34. Among other things, **MARK MORAD** used the funds in the Goldwell Account to pay patient recruiters, including **DEMETRIAS TEMPLE** and **NICOLE OLIVER**.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2

### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

35. Paragraphs 1 through 19 of this superseding indictment are re-alleged and incorporated as though fully set forth herein.

36. From in or around April 2005, and continuing through the present, in the Eastern District of Louisiana, and elsewhere, defendants, **MARK MORAD, DEMETRIAS TEMPLE**, and **NICOLE OLIVER** did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

b.  to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and

willfully offering and paying remuneration, specifically, kickbacks and bribes, directly

and indirectly, overtly and covertly, in return for referring individuals for the furnishing

and arranging for the furnishing of any item and service for which payment may be made

in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging

for and recommending the purchasing, leasing, and ordering of any good, item, and

service for which payment may be made in whole and in part by a Federal health care

program, that is, Medicare.

## Purpose of the Conspiracy

37.     It was a purpose of the conspiracy for defendants **MARK MORAD**,

**DEMETRIAS TEMPLE**, and **NICOLE OLIVER** and their co-conspirators to unlawfully

enrich themselves by paying and receiving illegal kickbacks and bribes in exchange for

providing Medicare beneficiary information that was used to submit claims to Medicare.

## Manner and Means of the Conspiracy

38.     The manner and means by which the defendants and their co-conspirators sought

to accomplish the object and purpose of the conspiracy included, among others, the following:

39.     Paragraphs 22 through 34 of this superseding indictment are re-alleged and

incorporated by reference as if fully set forth herein.

## Overt Acts

40.     In furtherance of the conspiracy, and to accomplish its object and purpose, the

conspirators committed and caused to be committed, in the Eastern District of Louisiana and

elsewhere, the following overt acts:

11

41.     On or about May 6, 2005, **MARK MORAD** paid, or caused to be paid, $2,400 to **NICOLE OLIVER**, in exchange for **NICOLE OLIVER** referring Medicare beneficiaries for home health services.

42.     On or about May 28, 2010, **MARK MORAD** paid, or caused to be paid, $600 to **NICOLE OLIVER**, in exchange for **NICOLE OLIVER** referring Medicare beneficiaries for home health services.

43.     On or about May 6, 2011, **MARK MORAD** paid, or caused to be paid, $10,800 to **DEMETRIAS TEMPLE**, in exchange for **DEMETRIAS TEMPLE** referring Medicare beneficiaries for home health services.

44.     On or about April 20, 2012 **MARK MORAD** paid, or caused to be paid, $8,400 to **DEMETRIAS TEMPLE**, in exchange for **DEMETRIAS TEMPLE** referring Medicare beneficiaries for home health services.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 3-5

### Money Laundering
### (18 U.S.C. §§ 1956(a)(1)(A)(i) and 2)

45.     The allegations contained in paragraphs 1 through 19 of this superseding indictment are realleged and incorporated as if fully set forth in this paragraph.

46.     On or about the dates identified below, within the Eastern District of Louisiana and elsewhere, defendant, **MARK MORAD** did knowingly conduct financial transactions, as detailed herein below, affecting interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, specifically health care fraud, contrary to Title 18, United States Code, Section 1347, and illegal health care kickbacks, contrary to Title 42, United State Code, Section 1320a-7b(b), knowing that the property involved in the transactions

12

represented the proceeds of some form of unlawful activity, with the intent to promote the

carrying on of such specified unlawful activities.

| Count | Date | Transaction |
|-------|------|-------------|
| 3 | 12/22/2011 | Check to L.H. from the Capital One Account Number xxxxxx1382 in the amount of $4,100.00 |
| 4 | 04/27/2012 | Check to J.W. from the Capital One Account Number xxxxxx1382 in the amount of $2,000.00 |
| 5 | 08/24/2012 | Check to **DEMETRIAS TEMPLE** from the Capital One Account Number xxxxxx1382 in the amount of $9000.00 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## <u>COUNT 6</u>

### Conspiracy to Falsify Records in a Federal Investigation
### (18 U.S.C. § 371)

47.     The allegations contained in paragraphs 1 through 19 are re-alleged and

incorporated as if fully set forth in this paragraph.

48.     From in or around December 2012, and continuing through the present, in the

Eastern District of Louisiana, and elsewhere, defendant **MARK MORAD** did knowingly and

willfully combine, conspire, confederate and agree with others known and unknown to the Grand

Jury, to commit certain offenses against the United States, that is: to violate Title 18, United

States Code, Section 1519, by knowingly altering, destroying, mutilating, concealing, covering

up, falsifying, or making false entries in the records, documents, and tangible objects relating to

the tax records, financial records, and/or personnel records of Goldwell Investments, Inc., with

the intent to impede, obstruct and influence the investigation and proper administration of such

matters and in relation to and contemplation of any such matter and case within the jurisdiction

of a department and agency of the United States, specifically, a federal Grand Jury sitting in the

Middle District of Louisiana, the Federal Bureau of Investigation, and Department of Health and

Human Services, Office of the Inspector General.

## Purpose of the Conspiracy

49.     It was a purpose of the conspiracy for defendant **MARK MORAD** unlawfully to

impede, obstruct and influence the investigation and proper administration of such matters and in

relation to and contemplation of any such matter and case within the jurisdiction of a department

and agency of the United States, specifically, a federal Grand Jury sitting in the Middle District

of Louisiana, the Federal Bureau of Investigation, and Department of Health and Human

Services, Office of the Inspector General.

## Overt Acts

50.     In furtherance of the conspiracy, and to accomplish its object and purpose, the

conspirators committed and caused to be committed, in the Eastern District of Louisiana and

elsewhere, the following overt acts:

51.     In or around February 2013, **MARK MORAD** instructed Unindicted Co-

Conspirator 1 to fabricate tax records pertaining to Goldwell Investments, Inc. for purposes of

providing such fabricated records to a federal grand jury.

All in violation of Title 18, United States Code, Section 371.

## COUNT 7

### Falsification of Records in Federal Investigations
### (18 U.S.C. §§ 1519 and 2)

52.     The allegations contained in paragraphs 1 through 19 are re-alleged and

incorporated as if fully set forth in this paragraph.

53.     In or around December 2012 through February 2013, in the Eastern District of

Louisiana, **MARK MORAD** knowingly altered, destroyed, mutilated, concealed, covered up,

falsified, or made false entries in the records, documents, and tangible objects relating to the tax

records, financial records, and/or personnel records of Goldwell Investments, Inc., with the intent

to impede, obstruct and influence the investigation and proper administration of such matters and

in relation to and contemplation of any such matter and case within the jurisdiction of a

department and agency of the United States, specifically, a federal Grand Jury sitting in the

Middle District of Louisiana, the Federal Bureau of Investigation, and Department of Health and

Human Services, Office of the Inspector General.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## NOTICE OF HEALTH CARE FRAUD FORFEITURE

54.    The allegations contained in Counts 1 and 2 of this Superseding Indictment are

hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the

United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

55.    As a result of the offenses alleged in Counts 1 and 2, defendants **MARK**

**MORAD, ALVIN DARBY, BARBARA SMITH, ROY E. BERKOWITZ, DEMETRIAS**

**TEMPLE and NICOLE OLIVER,** shall forfeit to the United States, pursuant to Title 18,

United States Code, Section 982(a)(7), any and all property, real and personal, that constitutes or

is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense

as a result of the violations of Title 18, United States Code, Sections 1347 and 1349, and/or Title

18 United States Code, Section 371 and Title 42, United States Code, Sections 1320a-7b(b)(1)

and (2), which are Federal Health Care offenses within the meaning of Title 18, United States

Code, Section 24.

56.    If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendants:

> a.    cannot be located upon the exercise of due diligence;
>
> b.    has been transferred, sold to, or deposited with, a third person;

15

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property;

All in violation of Title 18, United States Code, Section 982(a)(7).

## NOTICE OF MONEY LAUNDERING FORFEITURE

57.      The allegations of Counts 3 through 5 of this Superseding Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

58.      As a result of the offenses, alleged in Counts 3 through 5, defendant **MARK MORAD** shall forfeit to the United States all property real or personal, involved in the aforesaid offenses and all property traceable to such property which was involved in the said violations of Title 18, United States Code, Sections 1956 and 982.

59.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

16

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to

seek forfeiture of any other property of said defendant(s) up to the value of the above forfeitable

property.

All in violation of Title 18, United States Code, Section 982.

A TRUE BILL:

_____
FOREPERSON

_____
FRED P. HARPER, JR.
FIRST UNITED STATES ATTORNEY

_____
ARUNABHA BHOUMIK
ABIGAIL B. TAYLOR
TRIAL ATTORNEYS
CRIMINAL FRAUD SECTION
DEPARTMENT OF JUSTICE

_____
PATRICE HARRIS SULLIVAN
ASSISTANT UNITED STATES ATTORNEY
Louisiana Bar No. 14987

New Orleans, Louisiana
September 19, 2013

17

FORM OBD-34

No. 13-101 "R" (3)

## UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

**MARK MORAD, ALVIN DARBY, BARBARA SMITH, ROY E. BERKOWITZ, DEMETRIAS TEMPLE, and NICOLE OLIVER**

## INDICTMENT

**SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT HEALTH CARE FRAUD, CONSPIRACY TO RECEIVE AND PAY HEALTH CARE KICKBACKS, MONEY LAUNDERING, CONSPIRACY TO FALSIFY RECORDS IN A FEDERAL INVESTIGATION, FALSIFICATION OF RECORDS IN A FEDERAL INVESTIGATION, AND FORFEITURE**

**VIOLATIONS:   18 U.S.C. § 1349, 18 U.S.C. § 371, 18 U.S.C. § 1956, 18 U.S.C. § 1519, 18 U.S.C. § 2, 18 U.S.C. § 982**

_A true bill._

_____ Foreperson

_____

_Filed in open court this_ _____ _day of_ _____ _A.D. 2013._

_____ _Clerk_

_Bail, $_ _____

**ARUNABHA BHOUMIK, Trial Attorney**